Parker *v.* State.

PARKER *v.* STATE.

*(Knoxville.*   November 18, 1899.)

PARDON.   *Conviction.*

A conviction is final in such sense that the Governor's power to grant pardon attaches under the Constitution where, according to the usual practice, the Clerk, without special direction of the Court, enters formal judgment and sentence on the verdict of the jury, although the defendant on the same day obtains an order releasing himself on bond "pending the filing and hearing of the motion for a new trial," but subsequently obtains a pardon and abandons the making of a motion for new trial.

Constitution construed: Art. III., Sec. 6.

Code construed: § 7227 (S.); § 6093 (M. & V.); § 5252 (T. & S.).

Cases cited: Allen *v.* State, M. & Y., 295; Smith *v.* State, 6 Lea, 638; Crane *v.* State, 94 Tenn., 98.

---

FROM   HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County.   FLOYD ESTILL, J.

ATTORNEY-GENERAL PICKLE and W. T. MURRAY for State.

CLIFT & CUMMINGS, SHEPHERD & FRIERSON, DANIELS & GARVIN, and BROWN & SPURLOCK for Parker.

WILKES, J. Defendant, Robert Parker, was indicted in the Circuit Court of Hamilton County, charged with the murder of one James Cummings. The indictment was found at the May term, 1898. The case was tried, and resulted in the defendant being found guilty of the crime of manslaughter, and the jury fixed his punishment at two years in the penitentiary.

The entry recording the verdict of the jury recited the judgment upon the verdict in the following language:

"It is therefore ordered and adjudged by the Court that the defendant be confined in the penitentiary for a term of two years and pay the costs of this prosecution, for which execution may issue."

Following this entry, and on the same day, the 10th of January, the following order was entered:

"On application of the defendant it is ordered by the Court that the defendant may be released upon bond in the sum of $2,500, with good security, pending the filing and hearing of the motion for a new trial."

After this order was entered, on the same day, another entry appears, showing that the defendant did enter into bond, with security, for his appearance from day to day, pending the filing and hearing of motion for a new trial.

On the 16th day of January following the Governor granted a pardon to the defendant.

·On the 23d day of January the Attorney-general moved the Court to correct the order entered on the 10th day of January, wherein it was shown that sentence had been passed, upon the ground that no final sentence and judgment had· been pronounced. This order, thus entered, recited the terms of the order of January 10, 1899, and proceeded:

"The above is the usual and customary judgment pronounced on the verdict of guilty, unless a motion in arrest is entered at the time the verdict is reported, or before the clerk has time to make the entry. It is the practice of the Court to pronounce a formal sentence in felony cases after the motion for a new trial is overruled. No formal sentence was pronounced in this case. This entry is made of record at the request of one of the attorneys representing the State."

On the 27th day of January the Attorney-general moved the Court for a forfeiture of the bond of Robert Parker. This motion was continued until February 11, 1899, when the motion to take forfeiture came on for hearing, and the defendant being then present, the Attorney-general moved the Court to have final sentence passed upon the defendant. Whereupon the defendant produced· in open Court the pardon. The Attorney-general insisted that the pardon was void, that the Governor had no power to grant the same

until the case had been finally determined in the Circuit Court, insisting that no final sentence had been pronounced; that the defendant, having been out on bail. awaiting the determination of the motion for a new trial, the Court had not exhausted itself upon the case; therefore the Governor could not interfere with the jurisdiction of the Court. The defendant moved for a discharge under the pardon.

The Court overruled the motion of the Attorney-general and sustained the motion of the defendant, to which action of the Court the attorney-general excepted, and prayed an appeal to this Court, tendering a bill of exceptions, setting out the testimony in full and all of the facts of the case with reference to the granting of the pardon and the proceedings thereafter.

The State, through the Attorney-general, insists that the pardon granted to defendant is void, because his case had not been finally disposed of, but was still pending in the trial Court.

Article III., Sec. 6, of the Constitution provides that the Governor shall have power to grant reprieves and pardons after conviction, except in cases of impeachment. See the statutory provision, in effect the same. Shannon, Sec. 7227.

For the defendant, it is insisted that the term "conviction," as here used, signifies the adjudication or determination by the jury of the guilt or innocence of the defendant, and that after ver-

Parker *v.* State.

dict and before judgment pronounced upon it a
pardon may issue, but that in any event final
judgment in this case passed upon the defendant
after the verdict was returned by the jury, and
hence the pardon could legally issue.

The Court is of opinion this contention is well
made. The judgment of the Court upon the ver-
dict is in form a final one, without the neces-
sity of any formal sentence. The conviction was
one which did not require that a sentence of
infamy be pronounced.

There was no motion for a new trial or in
arrest of judgment, and the entries made upon
the minutes do not show that the defendant in-
tended or had asked any further action of the
Court. This being so, the pardon was valid and
effectual to discharge the prisoner, and it should
have been ordered, and he will now be dis-
charged.

DISSENTING OPINION.

WILKES, J.  I do not concur with the majority.  I
have no doubt but that this pardon was based upon
sufficient grounds, but I do not think it is valid.  I
am of opinion that if the defendant had submitted to
the verdict and the judgment upon it as a final-
ity, and nothing further had appeared upon the
records of the Court, it would have been a final
disposition in the sense that a pardon might issue.

But the record in this case shows that he did not submit and treat the judgment as the final action of the Courts, for upon his motion he was allowed to enter into bond to appear from day to day pending the filing and hearing of a motion for a new trial. It is true he did not enter such motion, but he did place himself in position to do so, and indicated his purpose so to do, and there can be no doubt but that the trial Judge would have entertained his motion for a new trial, or in arrest of judgment if such motion had been made, and there is no doubt but that the Court intended still to pronounce sentence formally.

I am of opinion the term "conviction," as used in the constitutional provision referred to, means not only that a verdict must be rendered, but it must be entered and judgment pronounced thereon, and there must not thereafter appear upon the records any entry indicating the purpose of the defendant to seek any other relief or invoke any other action of the trial or appellate Court.

If, for instance, he pray an appeal, a pardon cannot issue pending the hearing of the application in the trial Court, nor after it is granted, unless it shall be first abandoned of record. So, also, if the defendant indicates by entry of record that he desires further action of the trial Court in the way of a new trial or by arrest of judgment, no pardon can issue. He cannot at the

same time seek relief at the hands of the Court
and pardon at the hands of the Executive. It is
only after his case has been finally disposed of
in the Courts that a pardon can constitutionally
issue from the Executive. The defendant must
have exhausted all of his legal remedies or waived
them so far as the record indicates. The defendant
in such cases is not without remedy, for under
the provisions of the statute (Shannon, Sec. 7230),
execution of sentence may in all proper cases be
suspended, in order that the defendant may have
time to apply for a pardon. *Allen* v. *State,* Mar-
tin & Yerger, 295; *Smith* v. *The State,* 6 Lea,
638, 639; *Crune* v. *The State,* 10 Pickle, 98.
The section reads as follows:

"In case of the conviction and sentence of a
defendant to imprisonment, the presiding Judge
may in all proper cases postpone the execution of
the sentence for such time as may be necessary
to make application to the Executive for a par-
don or commutation of punishment."

It will be noticed that this does not contem-
plate a stay of judgment and sentence, but only
becomes applicable after both have passed, and
only stays execution. It does not say that judg-
ment may be suspended or sentence delayed, and
lends no color to the contention that the applica-
tion may be made after verdict and before judg-
ment and sentence, but only provides for a post-
ponement of execution of the sentence after it

has been pronounced, and the action of the Court, so far as trial proceedings are concerned, has become a finality.

In this particular case this remedy was peculiarly applicable and available to the defendant, inasmuch as the pardon recites upon its face that it is granted upon a strong letter from the trial Judge, Estill, and was recommended by ten of the trial jury and some 240 prominent citizens of Hamilton County and the city of Chattanooga.

It appears that this statute was intended to cover cases like the present one, and it could have been made available, but instead it appears that defendant held on to his right to a new trial, and expressed his intention to press it in the event he was not successful with the Governor in his application for pardon. I think this question one of vital importance and far-reaching in its results, and hence I file my dissent.