State ex rel Barnes v. Garrett.

## STATE *ex rel.* J. W. BARNES *v.* E. A. GARRETT. *
## (*Nashville.* December Term, 1915.)

1. PARDON.   Time of granting..   "Conviction."

Accused, found guilty, may be pardoned although appeal is pend-, ing, since in the provision of Const. art. 3, sec. 6, empowering the governor to pardon after conviction, "conviction" means verdict of guilty, not judgment or sentence; and the vacating or suspending of the judgment by appeal does not affect the verdict.   (*Post, pp.* 619-626.)

Cases cited and approved:   Ex Parte Campion, 79 Neb., 364; People v. Marsh, 125 Mich., 410;   Gilmore v. State, 3 Okla. Cr., 639.

Cases cited and distinguished:   Smith v. State, 74 Tenn., 637; Parker v. State, 103 Tenn., 547;   Commonwealth v. Lockwood, 109 Mass., 333;   State v. Alexander, 76 N. C., 231.

Codes cited and construed:   Secs. 5595, 7199, 7201, 7028, 7232, 7250(S.).

Constitution cited and construed:   Art. 3, sec. 6;   Art. 8, Ch. 2, sec. 1; Art. 1, sec. 5 (1870).

2. CRIMINAL LAW.   Pardon.   Waiver.

A prisoner, pardoned pending appeal, who unsuccessfully moves to dismiss his appeal, and does not call the attention of the supreme court to his pardon, the case not being tried on its merits, but affirmed for want of bill of exceptions, and who on remand interposes his pardon in the court below, does not waive the pardon.   (*Post, pp.* 626, 627.)

3. CRIMINAL LAW.   Judicial notice.   Pardon.

Courts do not judicially notice a pardon.   (*Post, pp.* 626, 627.)

Cases cited and approved:   United States v. Wilson, 7 Pet., 150; People v. Marsh, 125 Mich., 410.

*For authorities passing on the question of legislative power to grant pardon after conviction, see note in 34 L. R. A., 252.

State ex rel. Barnes v. Garrett.

**4. PARDON. Waiver.**

Usually, if a prisoner fails to plead his pardon and puts himself on his trial, he waives the advantage of the pardon. (*Post, pp.* 626, 627.)

**5.. PARDON.     Effect.     Payment of costs.**

A pardon does not release a convict from costs of the prosecution.     (*Post, pp.* 627, 628.)

Case cited and approved:     Spellings v. State, 99 Tenn., 201; Smith v. State, 74 Tenn., 637;  Henderson v. Walker, 101 Tenn., 229.

---

FROM PICKETT.

---

Appeal from the Criminal Court of Pickett County. —J. M. GARDENHIRE, Judge.

E. D. WHITE and J. L. McDONALD, for appellant.

W. H. SWIGGART, JR., Assistant Attorney-General, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

J. W. Barnes was indicted on a charge of carrying a pistol at the February, 1914, term of the criminal court of Pickett county.  He was tried at the October, 1914, term of that court, fined $50, and a jail sentence also imposed upon him.  He appealed in error to the December, 1914, term of this court.

Pending the hearing of his case in this court, he was pardoned by the Governor, December 22, 1914.  His

State ex rel. Barnes v. Garrett.

case was heard here January 11, 1915, and the judgment below, with a slight correction, was affirmed, and the case remanded for execution of said judgment.

Prior to the hearing in this court, Barnes undertook to dismiss his appeal in error, which he was not allowed to do, no explanation of this motion being made to the court, and the attorney-general opposing the motion in order to have the judgment corrected as before noted.

The pardon that had been granted to Barnes was not called to the attention of this court in any manner on his former appeal. Upon the remand Barnes pleaded his pardon in the trial court, but that court was of opinion the pardon was ineffective, and ordered Barnes into custody to serve his sentence and to secure the payment of the fine and costs previously adjudged against him. From the last order, the court refused an appeal, and this petition for *habeas corpus* was then filed. The petition was dismissed, and the petitioner gave bond and appealed.

The principal question is upon the validity of the pardon issued under such circumstances.

The Constitution of Tennessee provides that the Governor "shall have power to grant reprieves, and pardons, after conviction, except in cases of impeachment." Article 3, section 6.

The State insists that the pardon, issued pending appeal in error to this court was not issued after conviction. The argument is that the appeal in error suspended the judgment against Barnes, that he did not

stand convicted, ' and there was no conviction upon
which a pardon might operate, pending the appeal.

The contrary contention is that the verdict of the
jury against Barnes was a conviction; that he was con-
victed after verdict, and a lawful object of executive
clemency, regardless of judgment—whether or not
judgment had been entered, or, having been entered,
had been suspended by appeal in error.

What meaning is to be attached to the word "convic-
tion" in the section of the Constitution quoted?

In a *dictum* in *Smith* v. *State,* 74 Tenn. (6 Lea), 637,
the court said:

"A conviction implies not simply a verdict, but also
a judgment (see Bouv. Law Dict., title, Conviction);
though we believe it has not generally been held that a
judgment should be actually entered before a pardon
can be interposed."

In *Parker* v. *State,* 103 Tenn., 547, 53 S. W. 1092,
there was a verdict of guilty and judgment entered
thereupon, but defendant was released on bond pend-
ing motion for new trial. Prior to the filing of this mo-
tion, a pardon was granted, and the legality of the
pardon was questioned on the ground that there had
been no final judgment. We quote from the opinion:

"For the defendant, it is insisted that the term 'con-
viction,' as here used, signifies the adjudication or de-
termination by the jury of the guilt or innocence of the
defendant, and that after verdict and before judgment
pronounced upon it a pardon may issue, but that in any
event final judgment in this case passed upon the de-

fendant after the verdict was returned by the jury, and hence the pardon could legally issue.

"The court is of opinion this contention is well made. The judgment of the court upon the verdict is in form a final one, without the necessity of any formal sentence. The conviction was one which did not require that a sentence of infamy be passed."

*Parker* v. *State,* supra.

The learned justice delivering the opinion of the court in *Parker* v. *State* did not agree to the validity of the pardon. It does not distinctly appear what opinion the majority entertained as to the contention that conviction signified the determination of a defendant's guilt by the jury. The decision was apparently rested on the idea that final judgment had been entered on the verdict, which judgment had not been suspended.

In *Smith* v. *State,* supra, the court correctly declared the general rule to be that a judgment need not actually be entered before a pardon can be interposed. A conviction is held to accrue upon a verdict of guilty in all the cases of which we know, save *Ex parte Campion,* 79 Neb., 364, 112 N. W., 585, 11 L. R. A. (N. S.), 865, 126 Am. St. Rep., 667, 16 Ann. Cas., 319.

The *Campion Case* was really decided on other points, before the question here involved was reached, and the latter expressions of the court do not appear to have been at all necessary.

A very learned and elaborate discussion of the meaning of the word "conviction," as used in the Massachu-

setts Constitution (chapter 2, section 1, article 8), providing that:

"No charter of pardon granted by the governor, with advice of the council, before conviction, shall avail the party pleading the same," etc.

—was undertaken by Mr. Justice Gray in *Commonwealth* v. *Lockwood,* 109 Mass., 333, 12 Am. Rep., 699. He reviewed authorities in England, Massachusetts, and elsewhere, and showed very plainly that:

"The ordinary legal meaning of 'conviction' when used to designate a particular stage of a criminal prosecution triable by jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court, before which trial is had, declaring the consequences to the convict of the fact thus ascertained." *Commonwealth* v. *Lockwood,* supra.

It was accordingly held that a pardon granted after verdict of guilty and before sentence was valid.

The supreme court of North Carolina reached a like conclusion, where the Constitution authorized the governor to grant pardons "after conviction." That court referred to the fact that in England the King might issue a pardon at any time, and, pointing out the reason for the constitutional provision, said:

"At common law the crown exercised the power of pardon at any time. The consequence was that crimes were smothered. The facts were not brought to light.

The person charged was not brought before the public
and required to answer the charge, and of course the
public were dissatisfied.   But under our Constitution
and statute, the person charged must be brought be-
fore the public in a public trial, and face his accusers,
and all the facts must appear, and the jury must find
him guilty, and the court must sentence him.   If he will
then ask for pardon, he cannot deceive the pardoning
power.   The public are in possession of the facts and
can resist his application.   Nor is the pardoning pow-
er any longer irresponsible to the public, because he
has to report the facts and his reasons for exercising
the power.''   *State* v. *Alexander, 76* N. C., 231, 22 Am.
Rep., 675.

In the North Carolina case the defendant appealed
before pardon, and it was argued that the appeal va-
cated the sentence or judgment, and no conviction re-
mained.   The court, however, thought the sentence or
judgment was not part of the conviction, and the va-
cation of the judgment by appeal did not vacate the
conviction, the verdict of the  jury.   The  conviction
would not be annulled unless the supreme court found
error on the record, and awarded a new trial and a
venire *de novo.*   It was said that:

''Nothing can be a conviction but the verdict of a
jury.''   *State* v. *Alexander,* supra.

- In full accord with the Massachusetts  and  North
Carolina cases are *People* v. *Marsh,* 125 Mich., 410, 84
N. W., 472, 51 L. R. A., 461, 84 Am. St. Rep., 584; *Gil-*

*more* v. *State,* 3 Okl. Cr., 639, 108 Pac., 416, 139 Am. St. Rep., 981.

Looking to our statutes and to our Constitution, we find the word "conviction," as there used, does not ordinarily include nor imply judgment or sentence, but has a meaning entirely separate and apart from judgment or sentence.

In many of our statutes the term "conviction" is used to signify the jury's verdict of guilty, and as something precedent to, and distinct from, judgment or sentence.

Thus Shannon's Code, section 5595, provides that persons shall be rendered incompetent as witnesses by "conviction and sentence" for various crimes enumerated.

The following statutes further illustrate the point:

"Upon conviction of the crimes of abusing a female child, arson and felonious burning, burglary, etc., . . it shall be part of the judgment of the court that the defendant be infamous, and be disqualified to give evidence, or to exercise the elective franchise." Shannon's Code, section 7199.

"If the defendant has been convicted of two or more offenses before judgment on either, the judgment is that the imprisonment on one commence at the expiration of the imprisonment upon any other of the offenses." Shannon's Code, section 7201.

"Whenever a felon is convicted of stealing or feloniously taking or receiving [stolen] property, or defrauding another thereof, the jury shall ascertain the

value of such property, if not previously restored to the owner, and the court shall, thereupon, order the restitution of the property, and in case this cannot be done, that the party aggrieved recover the value assessed against the prisoner, for which execution may issue as in other cases." Shannon's Code, section 7208.

"The court may also, when any person is convicted of a capital offense, and the jury who convicted him state in their verdict that they are of opinion that there are mitigating circumstances in the case, commute the punishment from death to imprisonment for life in the penitentiary." Shannon's Code, section 7232.

"A conviction, judgment and execution for any one offense is no bar to a prosecution for any other public offense, committed previously, not necessarily included in the offense for which defendant was convicted." Shannon's Code, section 7250.

Illustrations might be multiplied, but the Constitution of 1870 itself shows what its framers understood the word "conviction" to mean. It is provided in the Constitution:

"That elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by a court of competent jurisdiction." Article 1, section 5.

135 Tenn.—40

Without further elaboration we are satisfied that as used in article 3, section 6, of the Constitution the word "conviction" does not imply judgment or- sentence. A pardon granted after a verdict of guilty is "after conviction," is valid, and entitles a defendant to his discharge, irrespective of judgment. An appeal in error suspends the judgment, but does not affect the verdict, and the defendant stands convicted, unless this court finds error and awards a new trial and venire *de novo*.

It is said, however, by the attorney-general that Barnes failed to plead his pardon on his former appeal to this court, and in no way called the attention of the court thereto, and that he has accordingly waived the benefit thereof.

It is undoubtedly true that the court does not judicially notice a pardon. A pardon is an act of grace, the benefit of which may be accepted or rejected by the convict. It is said to be like a deed, in that delivery is essential, and delivery is not complete without acceptance. If rejected, the court is without power to force the acceptance of executive clemency, and the court can neither know of the grant of a pardon nor presume its acceptance unless the facts are brought before it by motion, plea, or otherwise. So usually if one in possession of a pardon fails to plead it, and puts himself upon his trial, he has waived the advantage of such pardon. *United States* v. *Wilson*, 7 Pet., 150, 8 L. Ed., 640; *People* v. *Marsh*, 125 Mich., 410, 84 N. W., 472, 51 L. R. A., 461, 84 Am. St. Rep., 584; 4 Black. Com., 402.

Barnes, however, did not willingly go to trial in this court on the appeal in error from judgment against him. He undertook to dismiss his appeal, but permission to do this was denied him as heretofore stated. There was no investigation and no trial of his case here on its merits, and could not have been, for there was no bill of exceptions. A slight modification was made in the judgment below, technical in character, upon motion of the attorney-general, and the said judgment affirmed for want of bill of exceptions.

While it would have been proper practice for pardon to have been pleaded here, still the circumstances were unusual, and without precedent in our books, and we are not inclined to hold that Barnes lost the benefit of his pardon by his failure to call it to the attention of this court. He manifested no disposition to experiment with the court or trifle with its jurisdiction, but endeavored to dismiss his appeal. He did not put himself on trial here. There was only a formal affirmance of the judgment against him. He did promptly exhibit and interpose his pardon, in the court below, when the case was remanded for execution of sentence. Such delay, under such circumstances, should be attributed rather to the novelty of the situation and lack of announced rules of practice in this jurisdiction rather than to motives that would hazard the efficacy of the pardon.

The pardon did not release Barnes from any of the costs in the criminal case. *Spellings* v. *State,* 99 Tenn.

201, 41 S. W., 444; *Smith* v. *State,* 74 Tenn., (6 Lea), 637.

This case will be remanded to the court below, where petitioner will be held to secure all the costs in the criminal case. Upon payment of such costs he will be discharged. The costs of the *habeas corpus* proceedings are taxed to Pickett county. *Henderson* v. *Walker,* 101 Tenn., 229, 47 S. W., 430.